FILED
2019 Jan-09  AM 10:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Case No.: 2:18-cv-01197-KOB |
| | * | |
| THE BREAK I, INC., D/B/A THE BREAK RESTAURANT & BILLIARDS, INC. and AMANDA BEASLEY, | * | |
| Defendants. | * | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR DEFAULT
JUDGMENT AGAINST DEFENDANT AMANDA BEASLEY**

This is a declaratory judgment action. Plaintiff Evanston Insurance Company has obtained from the Clerk an entry of default against defendant Amanda Beasley. [Doc.14] Pursuant to Rule 55(b)(2), *Fed. R. Civ. P.*, Evanston seeks a default judgment against Amanda Beasley holding that Evanston has no duties to defend or indemnify defendant The Break I, Inc. against Ms. Beasley's state court litigation under a policy of commercial general liability insurance.

## LEGAL STANDARDS FOR DEFAULT JUDGMENT

"Once a party has defaulted, all well-pleaded factual allegations of the complaint are deemed admitted and proven." *Auto-Owners Ins. Co. v. Randy B. Terry, Inc.,* No. 5:12-CV-02717-TMP, 2013 WL 6583959, at *3 (N.D. Ala. Dec.

1

16, 2013) (adopting report of Putnam, Mag. J.). The Eleventh Circuit as stated the

law of default as follows:

> The entry of a default against a defendant, unless set aside pursuant to
> Rule 55(c), severely limits the defendant's ability to defend the action.
> While "a default is not treated as an absolute confession by the
> defendant of his liability and of the plaintiff's right to recover," a
> defaulted defendant is deemed to "admit[ ] the plaintiff's well-pleaded
> allegations of fact." *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515
> F.2d 1200, 1206 (5th Cir.1975). The defendant, however, "is not held to
> admit facts that are not well-pleaded or to admit conclusions of law." *Id.*
> Thus, before entering a default judgment for damages, the district court
> must ensure that the well-pleaded allegations in the complaint, which are
> taken as true due to the default, actually state a substantive cause of
> action and that there is a substantive, sufficient basis in the pleadings for
> the particular relief sought. At that point, the defendant, even though in
> default, is still entitled to contest the sufficiency of the complaint and its
> allegations to support the judgment being sought. *See Cotton v. Mass.*
> *Mut. Life Ins. Co.,* 402 F.3d 1267, 1278 (11th Cir.2005) (citing
> *Nishimatsu,* 515 F.2d at 1206).

*Tyco Fire & Security, LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007)

(italics in original and internal footnotes omitted); *see also Eagle Hospital*

*Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir. 2009) ("A

'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is

concluded on those facts by the judgment, and is barred from contesting on appeal

the facts thus established.'") (quoting *Nishimatsu Construction Co. v. Houston*

*Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975)). "Under this law, the court is

required to examine the factual allegations of the complaint, deeming them to be

admitted, and the evidence offered in support of the complaint to determine

whether there is a sufficient substantive basis for finding the defaulting defendant liable as alleged by plaintiff and for awarding the particular relief sought by the plaintiff." *Auto-Owners Ins. Co. v. Randy B. Terry, Inc., supra.*

## FACTS DEEMED ADMITTED BY DEFAULT

Evanston's predecessor Essex Insurance Company insured The Break under Policy 2CU1833 which had a policy period from April 6, 2015 to April 6, 2016. [Doc.1 ¶6; Doc. 1-1]

The COMMERCIAL GENERAL LIABILITY COVERAGE FORM in Policy 2CU1833 provides in pertinent part as follows:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

* * *

   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

* * *

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

2.    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

* * *

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and
   (2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:
   a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

[Doc.1 ¶7 & Doc. 1-1 (Policy form CG 00 01 (12-07) pages 1, 13, 15)]

Policy 2CU1833 contains an EXCLUSION - ASSAULT OR BATTERY

endorsement which provides in relevant part as follows:

**A.** Section **I —** Coverages, Coverage **A —** Bodily Injury And Property Damage Liability of the Commercial General Liability Coverage Form … is amended as follows:

\* \* \*

2.      The following exclusion is added:

This insurance does not apply to:
**Assault Or Battery**

   "Injury" arising out of "assault or battery", or any act or omission in connection with the prevention or suppression of "assault or battery", whether caused by or at the instigation or direction of:
      (1)      Any insured;
      (2)      Any "employee" of the insured;
      (3)      A patron of the insured; or
      (4)      Any other person.

   This exclusion applies regardless of any charges or allegations of negligent hiring, training, placement or supervision.

**B.** The **Definitions section** is amended as follows:

   **1.** The following definition is added to the Commercial General Liability Coverage Form and the Liquor Liability Coverage Form:

"Assault or battery" means:

    a.     Any attempt or threat to inflict "injury" to another person including any conduct or action that would reasonably place such person in apprehension of such "injury"; and/or

    b.     The intentional or reckless physical contact with or any use of force against a person without his or her consent that results in "injury" or offensive or abusive touching, whether or not the actual "injury" inflicted was intended or expected. The use of force includes but is not limited to the use of a weapon.

"Assault or battery" includes "injury" resulting from the use of reasonable force to protect persons or property.

**2.** The following definition is added to the Commercial General Liability Coverage Form:

"Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

[Doc.1 ¶8 & Doc. 1-1 (Policy form MEGL 0024 04 13)]

Amanda Beasley was allegedly shot in the left leg and ankle on or about August 1, 2015 outside The Break's place of business located at 1001 20th Street South, Birmingham, Alabama. [Doc.1 ¶10]

Evanston first learned of a potential claim by Ms. Beasley through receipt of a letter dated January 11, 2016, from her former attorneys, Norris Injury Lawyers, directed to The Break's insurance agent Nesbitt and Associates, Inc. [Doc.1 ¶11]

Thereafter, Evanston sent two reservation-of-rights letters to The Break, one in January 2016 and one in May 2016. Both letters stated: "In the event that you receive notice that a suit has been filed, please forward the suit and any additional information to our attention as soon as possible so that we can evaluate the specific allegations under the policy." [Doc.1 ¶12 & Docs.1-2, 1-3]

In May 2017, Ms. Beasley's current attorney Jarrod Nichols wrote to Evanston's claims manager and provided a police report relating to the shooting

and an affidavit of Bobby Banks, who claimed to be a witness to the shooting. [Doc.1 ¶13 & Docs.1-4, 1-5] Evanston heard nothing further concerning Ms. Beasley's potential claim for over a year after receipt of the affidavit and police report. [Doc.1 ¶14]

Ms. Beasley filed a lawsuit against The Break on July 6, 2017, in the Circuit Court of Jefferson County, Alabama. [Doc.1 ¶15 & Doc.1-7] The Break's owner and president, James Meeks Jr., first received notice of the lawsuit on September 20, 2017. The Break filed an Answer to the lawsuit on September 26, 2017. [Doc.1 ¶16 & Docs.1-8, 1-19]

The Break did not inform Evanston concerning the lawsuit filing or provide a copy of any of the suit papers until June 29, 2018. [Doc.1 ¶18 & Doc.1-11] No explanation was provided for the nine-month delay in providing Evanston notice of the lawsuit. Evanston was not informed about the mediation order or provided a copy of the order or any lawsuit papers other than the Complaint. [Doc.1 ¶19 & Doc.1-11]

In Count One of the lawsuit Complaint, Ms. Beasley alleges she was a customer of The Break on or about August 1, 2015, and was on its premises located at 1001 20th Street South, Birmingham, Alabama. She alleges she observed one of The Break's "security guards or personnel escort a male and female patron to their vehicle" and observed those "those two patrons get into their

vehicle and leave Defendant's premises." [Doc.1 ¶20 & Doc.1-7 Count One ¶1]

Ms. Beasley then alleges as follows:

> Minutes later, Plaintiff observed the same two patrons return in their vehicle and stop at the parking lot entrance of Defendant's premises, at which time the male patron fired several gunshots before fleeing the scene in their vehicle. As the two patrons drove away, Defendant THE BREAK's security guard who had escorted said patrons to their vehicle, brandished a gun and began shooting at said patron's vehicle, at which time he shot Plaintiff AMANDA BEASLEY in the left leg and ankle.

[*Id.*] Ms. Beasley restated these allegations in the next paragraph of Count One by saying that when she was "attempting to leave said premises when a security guard or bouncer employed by or contracted with Defendant THE BREAK, and acting as an agent, employee or servant of Defendant, negligently, wantonly, recklessly or willfully discharged a firearm, shooting Plaintiff in the left leg and ankle area." She further alleges as a "proximate or direct result of" this conduct "she was caused to suffer" injuries to her body "including but not limited to gunshot wounds to her left leg and ankle." She also contends that The Break "engaged in willful misconduct, malice, wantonness or otherwise demonstrated an entire want of care with regard to Plaintiff, thereby entitling Plaintiff to punitive damages." [Doc.1 ¶21 & Doc.1-7 Count One ¶¶2-3, 5]

In Count Two of the lawsuit Complaint, Ms. Beasley alleges that "on and before August 1, 2015," The Break "negligently hired, contracted, retained and/or trained its employees, agents or servants, including security personnel, and that as

7

a result of said negligent hiring, contracting, retention or training, Defendant THE

BREAK's employees, agents or servants, including security personnel, were not

adequately or properly qualified nor competent to provide safety and security to

and for customers, patrons or invitees of Defendant THE BREAK or to others on

or near Defendant's premises." She further alleges as a "proximate or direct result

of" this conduct "she was caused to suffer injuries and damages as previously set

forth herein" and that The Break's conduct "combined and concurred with the

negligent, wanton, reckless or willful actions of Defendant's agent, employee or

servant in causing Plaintiff's injuries and damages as previously set forth herein."

[Doc.1 ¶22 & Doc.1-7 Count Two ¶¶2-3]

> The affidavit of Bobby Banks stated in relevant part as follows:
>
> I was with Amanda Beasley at The Break on August 1, 2015, when we witnessed The Break's security guard escort a male and female patron to their car. The two patrons left, but returned within minutes and stopped at the parking entrance/exit, at which time the male patron fired several gunshots before fleeing the scene in their vehicle.
>
> The Break security guard then began running after and shooting at the vehicle as it drove away. I tried to get Amanda out of the security guard's line of fire, but then realized he had shot her in the leg and ankle. The Break security guard then approached us and apologized to Amanda for shooting her, stating it was an accident and offering to ride with Amanda to the hospital.

[Doc.1 ¶23 & Doc.1-5]

> According to the police report prepared by Officer Riley on August 1, 2015,

the shooting occurred at 2:15 a.m. on August 1, 2015, and was reported to Officer

Riley at 2:17 a.m. while he working off duty at The Break. Officer Riley

summarized statements from Ms. Beasley and an employee of The Break named

Kevin King, as follows:

> ON 08-01-2015 AT APPROXIMATELY 0217HRS I WAS WORKING OFF
> DUTY AT THE BREAK 1001 20TH ST S, WHEN A UNKNOWN BLACK
> FEMALE CAME INSIDE OF THE BUSINESS ADVISING THAT
> SOMEONE WAS SHOOTING OUTSIDE. AS I MADE MY WAY OUTSIDE
> A CROWD OF SUBJECTS POINTED TO THE BACK OF THE BUSINESS
> ADVISING THAT SOMEONE HAD BEEN SHOT. ONCE AT THE BACK
> OF THE BUSINESS I OBSERVED A WHITE FEMALE IDENTIFIED AS
> AMANDA BEASLEY SUFFERING FROM A GUNSHOT WOUND TO HER
> LOWER LEFT LEG. WHEN I ASKED HER WHAT HAPPENED SHE
> ADVISED THAT ALL SHE REMEMBERED WAS HEARING MULTIPLE
> SHOTS BEING FIRED.
>
> I THEN SPOKE TO KEVIN KING, WHO STATED THAT HE WAS ONE
> OF THE SUBJECTS SHOOTING. KING WHO WORKS AT THE BREAK
> ADVISED THAT HE WAS AT THE BACK DOOR TAKING MONEY WHEN
> A UNKNOWN HISPANIC MALE TRIED TO COME INSIDE. WHEN KING
> ASKED FOR THE HISPANIC MALES LICENCE, KING ADVISED THE
> MALE BECAME IRATE. KING STATED THAT HE THEN ADVISED THE
> HISPANIC MALE TO LEAVE THE PROPERTY.
>
> KING STATED THAT HE ESCORTED THE SUBJECT OFF THE
> PROPERTY, AND THOUGHT HE WAS ABOUT TO LEAVE. WHILE
> WALKING BACK TO THE DOOR KING ADVISED THE HISPANIC MALE
> WHO WAS DRIVING A DARK GRAYISH COLOR TOYOTA PARKED IN
> THE MIDDLE OF THE ROAD AND FIRED MULTIPLE SHOTS AT HIM.
> KING STATED THAT HE RETURNED FIRE AT THE SUBJECT WITH
> HIS 38 CALIBER COBRA FS380.

[Doc.1 ¶24 & Doc.1-6]

### ALABAMA LAW GOVERNING INSURANCE POLICY ANALYSIS

According to the Alabama Supreme Court, "insurance companies have the

right to limit their liability and to write policies with narrow coverage." *Hooper v.*

*Allstate Ins. Co.,* 571 So.2d 1001, 1003 (Ala. 1990).  If a policy provision is

unambiguous, then a court must enforce the policy as it is written. *Chamblee v. State Farm Mut. Auto. Ins. Co.*, 601 So.2d 922 (Ala.1992); *Turner v. USF&G,* 440 So. 2d 1026 (Ala. 1983) ("Where there is no ambiguity in its terms, this Court must enforce the contract as written and cannot defeat express provisions in the policy, including exclusions, by making a new contract for the parties... ."). If a word is defined by the insurance policy, the word must be given the meaning as defined in the policy. *Alfa Life Ins. Corp. v. Johnson & Winters,* 822 So. 2d. 400 (Ala. 2002).

Alabama law imposes a fairly broad duty on an insurer to defend its insured under an insurance policy, which is "more extensive" than the duty to indemnify. *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank,* 928 So.2d 1006, 1009 (Ala. 2005) (quoting *United States Fid. & Guar. Co. v. Armstrong,* 479 So.2d 1164, 1168 (Ala.1985)). Courts determine whether there is a duty to defend by reviewing the factual allegations of the underlying lawsuit complaint and comparing those allegations to the policy provisions, and "it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Id.* at 1012. *Accord Cotton States Mutual Insurance Co. v. Daniel*, 2008 U.S. Dist. LEXIS 94696, 2008 WL 4999097, *18 (M.D. Ala. Nov. 20, 2008) ("[t]o ascertain whether [an insurer] owes [its insured] a duty to defend, the court focuses on the factual allegations in the complaint, not on the legal theories asserted."); *Geovera Specialty Ins. Co. v. Hutchins*, 831 F. Supp. 2d 1306, 1313 (M.D. Fla. 2011) ("A

duty to defend cannot be triggered merely by labeling an intentional act 'negligent.' Where the facts alleged establish intentional conduct, but the claim asserts negligence, the negligence label should be disregarded. A wolf dressed in a sheep's clothing may present a clever disguise; however, a wolf is still a wolf.") (citations omitted), *aff'd* 2013 WL 257426 (11th Cir. Jan. 24, 2013).

An insurer does not have a duty to defend when the complaint or operative facts show the applicability of a policy exclusion. *Alfa Specialty Ins. Co. v. Jennings,* 906 So.2d 195 (Ala.Civ.App.2005). Once the insurer establishes it has no duty to defend, the insurer is necessarily entitled to a judgment on its narrower duty to indemnify. *Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify."); *Peace v. Rock*, 2018 U.S. Dist. LEXIS 171451, *6-7, 2018 WL 4816486 (N.D. Ala. Oct. 4, 2018) (Axon, J.) ("because the court has determined that Columbia has no duty to defend any of the defendants, the court must also enter a default declaratory judgment in its favor as to the duty to indemnify"); *Evanston Ins. Co. v. Yeager Painting, LLC*, 2018 U.S. Dist. LEXIS 130316, *8, 2018 WL 3708555 (N.D. Ala. Aug. 3, 2018) (Ott, Mag, J.) ("While ordinarily the two duties must be analyzed separately, because the duty to defend is broader, no duty to indemnify exists where there is no duty to defend."); *Grange Mut. Cas. Co. v. Indian Summer Carpet Mills, Inc.*,

11

2018 U.S. Dist. LEXIS 122369, *5, 2018 WL 3536625 (N.D. Ala. July 23, 2018) (Axon, J.) ("An insurer's duty to defend is broader than its duty to indemnify, and if there is no duty to defend, there is also no duty to indemnify. … As a result, if an insurer has no duty to defend an insured, a declaratory judgment claim regarding the insurer's duty to indemnify is ripe even if the underlying action is still pending."); *Monroe Guar. Ins. Co. v. Pinnacle Mfg., LLC*, 2018 U.S. Dist. LEXIS 113073, *16, 2018 WL 3352656 (N.D. Ala. July 9, 2018) (England, Mag. J.) ("no duty to indemnify exists where there is no duty to defend"); *Auto-Owners Ins. Co. v. McMillan Trucking, Inc.,* 242 F. Supp. 3d 1259, 1266, 2017 U.S. Dist. LEXIS 36870, *14, 2017 WL 992181 (N.D. Ala. March 15, 2017) (Coogler, J.) ("The duty to defend is broader than the duty to indemnify, and as there is no duty to defend in this case, there is also no duty to indemnify."); *Pa. Nat'l Mut. Cas. Ins. Co. v. Ret. Sys. of Ala.,* 104 F. Supp. 3d 1313, 1316 (N.D. Ala. 2015) (Smith, J.) ("the duty to *defend* is broader than the duty to *indemnify. …* Accordingly, where the court finds that there is no duty to *defend*, it also must find that there is no duty to *indemnify*.") (italics in original).

## ARGUMENT

Accepting as true all of Evanston's well-pleaded factual allegations, Evanston has shown grounds to be relieved of the duty to defend and indemnify The Break against Ms. Beasley's claims in the underlying lawsuit based on (1) the

assault and battery exclusion and (2) The Break's unexplained lengthy delay in notifying Evanston about the lawsuit.

1.  **The Assault and Battery Exclusion Precludes Any Duty to Defend or Indemnify The Break Against Ms. Beasley's Lawsuit.**

As noted above, Policy 2CU1833 does not apply to "'injury' arising out of 'assault or battery.'" In *Am. Liberty Ins. Co. v. Soules*, 258 So. 2d 872, 875 (Ala. 1972), the Alabama Supreme Court held the phrase "arising out of" denotes a causation requirement when used in an insurance policy. *Id*. at 875. Accordingly, applying *Soules*, there is no coverage under Policy 2CU1833 if there is a "causal connection" between Ms. Beasley's alleged injury and at least one "assault" or "battery." The Alabama cases are clear that an assault and battery exclusion applies even to negligence claims and even if no assault and battery claim has been asserted, if the underlying facts sufficiently describe an assault or battery.

In *Gregory v. W. World Ins. Co., Inc.*, 481 So. 2d 878 (Ala. 1985), the Alabama Supreme Court affirmed a trial court's declaratory judgment in favor of a liquor liability insurer based on following exclusion: "It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person." 481 So. 2d at 878. In the

13

underlying lawsuit, a bar patron named Bobby Gregory had sued another bar patron named Jerry Raines for assault/battery and had sued the insured bar owners and their employees for negligence / wantonness and violation of the Alabama Dram Shop Act. *Id.*  The parties stipulated that "Raines did strike Bobby Gregory in the face with his fist without provocation by Bobby Gregory while both Jerry Raines and Bobby Gregory were on the premises of the insureds." *Id.* at 880.

Affirming, the Alabama Supreme Court ruled that the exclusion defeated any duty by the insurer to defend the negligence/wantonness and Dram Shop claims which Gregory had made against the insureds:

> The effect of the assault and battery exclusion, clear in itself, does no more than the other exclusions agreed to by the insured; limiting the company's coverage to those remaining instances of injury arising out of 'the selling, serving or giving of any alcoholic beverage at or from the insured premises.'

> It is not disputed that the bodily injury in question here was injury 'arising out of assault and battery.' The exclusion, therefore, being applicable, the trial court was correct in granting summary judgment for the plaintiff.

481 So. 2d at 881. Accordingly, regardless of the labels Gregory gave to the claims made against the bar owners, *i.e.,* negligence and Dram Shop violations, the Alabama Supreme Court held those claims arose out of the undisputed fact that Raines had struck Gregory in the face, and thus were excluded from the scope of the policy's coverage. *Id.*

14

In *Admiral Ins. Co. v. Price-Williams*, 129 So.3d 991 (Ala. 2013), the Alabama Supreme Court ruled a similar but narrower assault and battery exclusion was unambiguous and excluded coverage for "negligent failure to prevent assault" claims similar to Ms. Beasley's Count Two. The underlying lawsuit in that case was brought by Ryan Price-Williams, who had been attacked and beaten by a fraternity chapter's president, Gabriel Dean, the chapter's vice-president, Charles Baber, and by a third fraternity member, Michael Howard. *Id.* at 991-992. Price-Williams' lawsuit included claims for assault and battery as well as "negligence and/or wantonness claims based on Dean's and Baber's failure as officers … to implement the risk-management program Kappa Sigma [the national fraternity] required of local chapters." *Id.* at 991. Admiral had denied coverage to Baber and Dean based on its policy exclusion that the insurance "does not apply to 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' arising out of any act of assault and/or battery by any insured or additional insured." *Id*. at 995. Reversing the trial court, the Alabama Supreme Court ruled that there was no coverage because Price-Williams' injuries arose from an assault and battery by the additional insureds, regardless of the nature of the claims asserted:

> [T]he assault-and-battery exclusion bars Price-Williams from recovering from Admiral on the basis of the negligence and wantonness claims he asserted against Dean and Baber … ***even though that negligent or wanton conduct is not itself excluded from coverage.*** As the trial court stated in its final judgment, Dean's and Baber's negligent or wanton acts in failing to implement a risk-

management program combined with the assault to result in "one indivisible injury" to Price-Williams. Stated another way, it is impossible to allocate some portion of Price-Williams's injuries and the award of damages based on those injuries to the failure to implement a risk-management program and some other portion to the assault. … *All of Price-Williams's injuries arose from and were the product of the assault — notwithstanding the fact that the negligent or wanton failure to implement a risk-management program may have been an additional proximate cause.*

The assault-and-battery exclusion in the Admiral policy states that there is no coverage for "'bodily injury' ... arising out of any act of assault and/or battery by any insured or additional insured." *All of Price-Williams's injuries without question resulted from an act of assault in which additional insureds Dean and Baber participated. Therefore, regardless of the fact that there may have been a separate act that also contributed to Price-Williams's injuries, there is no coverage in this case.* The clear terms of the assault-and-battery exclusion must be enforced.

*Id.* at 997 (emphasis added).

In *Robinson v. Hudson Specialty Insurance Group et al*, 984 F.Supp.2d 1199 (S.D. Ala. 2013), the Southern District of Alabama held an assault and battery exclusion barred coverage for claims of negligence and Dram Shop Act liability asserted by someone who allegedly was shot twice by unknown assailants at a bar. The court held in relevant part:

As alleged, Robinson's negligence claim clearly "arises out of" the assault/battery caused by omissions on the part of Crown Theater and/or its employees – i.e., the club's failure to maintain safety and order resulting in him being shot five (5) times. In other words, but for the assault/battery (the shooting), Robinson would have no negligence claim because he would have had no injury.

*Id.* at 1208.  Like Ms. Beasley, Robinson had not sued the alleged shooters and did

16

not include an assault and battery legal claim in his lawsuit against the insured. More recently, in *Casher v. Hudson Specialty Ins. Co.,* 2017 U.S. Dist. LEXIS 111229, *2, 2017 WL 3037576 (S. D. Ala. July 18, 2017), the federal district court followed these Alabama authorities and held an assault and battery exclusion barred coverage of an underlying lawsuit arising from the fatal shooting of a bar patron, even though the estate of the deceased patron did not sue the alleged shooter and did not include an express "assault and battery" claim.

In Ms. Beasley's complaint, she alleges that a male patron who had been escorted from the premises returned and began firing gunshots at a security guard. She alleges the security guard responded by "brandish[ing] a gun and … shooting at said patron's vehicle" which allegedly resulted in the guard shooting her. These allegations describe two different assaults and one battery.

The male patron's conduct meets one definition of "assault or battery" set forth in Policy 2CU1833. By shooting at the security guard, the male patron "attempt[ed] …to inflict 'injury' to another person [the guard] including any conduct or action that would reasonably place such person in apprehension of such 'injury'…." A person who is being shot at reasonably can apprehend being injured.

The security guard's responsive conduct likewise meets the definitions of "assault or battery" set forth in Policy 2CU1833. First, by shooting at the patron's car, the guard "attempt[ed] …to inflict 'injury' [bodily injury or property damage]

to another person [the male patron who shot at him] including any conduct or action that would reasonably place such person in apprehension of such 'injury'…." The male patron reasonably would have reasonably apprehended either a bodily injury to his own person or property damage to his car as a result of the security guard's shots.

Second, the guard engaged in "intentional or reckless physical contact with or any use of force against a person without his or her consent" by shooting at the patron and his car and this action "result[ed] in 'injury' or offensive or abusive touching [to Ms. Beasley], whether or not the actual 'injury' inflicted [to Ms. Beasley] was intended or expected."

The security guard's conduct also falls within the commonly accepted meaning of assault and battery under Alabama law.[1] Alabama law recognizes the "doctrine of transferred intent" meaning that an assault and battery is proven even if the shooter did not expressly intend to shoot a bystander like Ms. Beasley. *Mathis v. State*, 497 So. 2d 231, 232 (Ala. Crim. App. 1986) (citing 6 AM. JUR. 2D Assault and Battery, § 18). In *Mathis*, the Court ruled "'the guilt of an accused who, intending to injure one person, ***accidentally*** injures another, is to be

---

[1] *See e.g., Ala. Code* § 13A-6-21(a)(2) & (3) (a person commits the crime of "second degree" assault under Alabama criminal law if "With intent to cause physical injury to another person, he or she causes physical injury to any person by means of a deadly weapon …; or … He or she recklessly causes serious physical injury to another person by means of a deadly weapon …."); *K-Mart Corp. v. Perdue*, 708 So. 2d 106, 110 (Ala. 1997). The Alabama civil tort of "assault" involves an act intended to cause unwelcome or offensive bodily contact coupled with an imminent apprehension of such contact (e.g., done in a rude, hostile or violent manner), while the civil tort "battery" involves an act intended to cause unwelcome or offensive bodily contact coupled with actual bodily contact.).

determined as if the accused had injured his intended victim.'" *Id.* (emphasis added; quoting *Bradberry v. State*, 67 So.2d 561, 564 (Ala. App. 1953)). *See also* 6 AM. JUR. 2D Assault and Battery § 89 ("It is not essential, to render one liable for assault and battery, that the violence used be applied directly to the plaintiff; it may be applied through some intervening agency, if the defendant's action is the proximate cause of the assault and battery.  For instance, instigating a bar brawl may be a proximate cause of a battery, even though an unknown third person threw the bottle that hit the plaintiff.") (footnotes omitted). Here, the security guard committed an assault and battery as defined by Alabama law by returning fire against the patron. The fact that Ms. Beasley was accidentally shot as a bystander does not change the nature of the underlying conduct as an assault and battery.

Courts in many other jurisdictions similarly have upheld assault and battery insurance policy exclusions as precluding bystanders' negligence and negligent supervision claims under similar circumstances.

A federal district court in Mississippi applied an assault and battery exclusion to a nearly-identical scenario in which the bystander plaintiff was shot by a security guard who was returning fire of another patron who had fired a gun in a bar. *Archie v. Acceptance Indem. Ins. Co.,* 2012 U.S. Dist. LEXIS 67039, *1-*2, *7, 2012 WL 1715836 (N.D. Miss. May 14, 2012). The injured patron asserted the exclusion did not apply because his injury was caused by "reckless disregard" and

not an assault/battery and because his claims were for premises liability and negligent hiring. *Id.* at *5-*6. The court rejected this argument:

> [E]ven assuming arguendo that [the patron] Hemphill's actions arise only to the level of reckless disregard, as urged by the plaintiff, the court must likewise consider [the security guard] King's shooting, which was to 'return[] fire from Hemphill.' It is uncontested that [the security guard] King intended to return fire and that he did not do so accidentally. In returning fire, at the very least he intended to cause imminent apprehension of harmful contact to [the patron] Hemphill. There could be no other reason for returning fire; no other reason has been offered; and no reasonable juror could find otherwise. …
>
> Because of the broad "arising out of" language in the assault and battery exclusion, ***there is no requirement that the plaintiff be the intended victim of the assault and/or battery***.

*Id.* at *7-8 (emphasis added). The court also emphasized that the patron's initial shooting must not be forgotten in the course of analyzing the exclusion – "The bodily injury at issue could be said to have arisen from [the patron] Hemphill's assault the same as from King's, even though it was [the security guard] King's bullet which ultimately caused the plaintiff's injuries." *Id.* at *13.

In a similar bystander-shooting case, *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515 (Kan. 1998), the underlying plaintiffs "were patrons in the bar and were shot during a disturbance in the bar when shots were exchanged between another patron and one or more insureds" that is, one or more of the bar owners or their employees. *Id*. at 517. Finding in favor of the insurer that the patrons' negligence claims against the bar owners were excluded, the Supreme Court of Kansas held:

Although assault and battery have varying definitions, these definitions only slightly deviate and regardless of the definition used, they all convey the same general meaning. ***In the case at hand, the definitions of assault and battery do not present various and distinct definitions. The March 25 incident would be deemed a battery in the criminal context, as well as the civil context.*** Furthermore, all of the above definitions comport the same overall meaning.

…

Courts analyzing this issue have consistently held that the ***theory of liability is irrelevant*** when the injuries arose out of an assault and battery. Thus, the negligence claims do not affect the applicability of the assault and battery exclusion.

*Id*. at 518 (emphasis added).

A federal district court in Maine likewise rejected the "innocent bystander" argument in *Eaton v. United Am. Ins. Group*, 685 F. Supp. 2d 154, 155 (D. Me. 2010), another case involving an injury caused to a bar patron by a security person reacting to another patron. The plaintiff's finger was broken when a bouncer slammed open the door of the bar to forcibly evict an unruly patron. In particular, the court pointed out that the policy excluded "'bodily injury . . . <u>resulting</u> from assault and battery or physical altercations.' … It does not say 'bodily injury intentionally resulting from an assault and battery or physical altercation.'" *Id*. at 158 (underlining in original). Accordingly, the exclusion applied even though the bouncer had no intention of harming the plaintiff in the course of evicting the unruly patron from the premises. *Id.*

The same result was reached in *Hermitage Ins. Co. v Beer-Bros, Inc. of NYC,* 7 N.Y.S.3d 885 (N.Y. Supreme Court, 1st JD 2015). In that case, an unruly

patron named Petrisch, who was denied entry to a bar, spit on a bouncer named Morgan who then chased Petrisch across the street and tackled him, striking an innocent bystander named Mourino. *Id.* at 886. Mourino argued the exclusion did not apply because the bouncer acted negligently when tackling the unruly patron and that the bar owner had negligently hired, trained, and supervised the security personnel. *Id*. Not so, the court ruled:

> [E]ven though Mourino pleads her claim in the underlying action as negligence, her injuries grew out of a battery, which is excluded from coverage. … Regardless of the theory pleaded, if there would be no cause of action "but-for" an assault or battery, the exclusion applies. … That Morgan's intentional act may have been directed at Petrisch and that Mourino was merely an innocent bystander would not change the fact that Mourino's injuries arose out of a battery, and that is excluded from coverage ….

*Id.* at 888 (citations omitted).

In *Eady v. Capitol Indem. Corp.*, 502 S.E.2d 514 (Ga. App. 1998), the Georgia appellate court considered an innocent bystander injury scenario. In that case, two bar patrons (Eady and Kittles) were shot by another patron named Roberts as he was shooting at yet another patron named Lamont with whom he had a dispute. *Id.* at 515. The Georgia appellate court held the policy exclusion barred the patron's negligence claims, reasoning: "Applying the 'but for' analysis to this case, as we are required to do, the conclusion is inescapable that but for the assault perpetrated by Roberts there could be no claim by either Eady or Kittles, as the injuries giving rise to their claim would not have occurred." *Id.* at 516.

A Florida federal district court similarly ruled in a bystander injury / transferred intent case arising from a bar fight:

> "A duty to defend cannot be triggered merely by labeling an intentional act 'negligent.'" … Where the facts alleged establish intentional conduct, but the claim asserts negligence, the negligence label should be disregarded. …
>
> Although the Underlying Action indicates that the perpetrator "accidentally" threw a chair, it is clear that the perpetrator intended to carry out his actions — to physically pick up and to throw the chair in a bar full of other patrons — and that he had an apparent ability to do so. The perpetrator carried out those actions, and the record demonstrates those actions created a well-founded fear that the perpetrator had the intent to do violence. Specifically, when the perpetrator lifted up the chair and threw it, other patrons ducked out of the way before the chair hit Mr. Cortes-Garcia. … [T]he facts before the Court demonstrate that Mr. Cortes-Garcia was assaulted. Additionally, the perpetrator's actions constituted a battery because the perpetrator intended to, and did, pick up and throw the chair, which inflicted a harmful contact upon Mr. Cortes-Garcia.

*Founders Ins. Co. v. Cortes-Garcia,* 2012 U.S. Dist. LEXIS 89969, *17-18, 2012 WL 2505917 (M.D. Fla. June 28, 2012) (citations omitted). *Accord Mark Mc Nichol Enterprises, Inc. v. First Financial Ins. Co.,* 726 N.Y.S.2d 828 (App. Div. 4th Dep't 2001) (assault and battery exclusion preclude coverage for negligence and negligent supervision claims asserted by a bystander patron who "was struck in the face by a beer bottle that had been thrown during a fight involving several other patrons").

In conclusion, when the male patron returned to The Break's premises and opened fire on the security guard who had evicted him, there was an "assault" as

23

defined by the policy and as commonly understood under applicable law. This assault was the ultimate cause of Ms. Beasley's injuries, because the security guard would not have had any reason to shoot back but-for his response to the drive-by shooting. Moreover, the security guard's return fire towards the male patron was also an "assault and battery" as defined by the policy and as commonly understood under applicable law. This assault and battery was also a but-for cause of Ms. Beasley's injuries, because she would not have been hurt if the security guard had not returned fire.

The policy's exclusion does not require that the security guard or the male patron intend for Ms. Beasley to be injured. Instead, the exclusion broadly precludes coverage for any injury which arises out of an assault and battery. Courts in Alabama and elsewhere have applied assault and battery exclusions when the underlying facts indicate an assault and battery caused the injury, regardless whether the plaintiff only asserted negligence-type claims and regardless whether the plaintiff was an innocent bystander accidentally struck by a bullet fired at another person or accidentally struck by an object thrown at another person or otherwise accidentally injured in the course of one person assaulting or battering another. For this reason alone, Evanston is entitled to a default judgment against Ms. Beasley in this declaratory judgment action finding that Evanston has no duty to defend or indemnify The Break against Ms. Beasley's claim..

**2.      The Break's Failure to Comply With the Policy's Notice Provisions Precludes Any Duty to Defend or Indemnify The Break Against Ms. Beasley's Lawsuit.**

As noted above, Policy 2CU1833 required that The Break notify Evanston in writing of the lawsuit "as soon as possible," and to "immediately send [Evanston] copies of any demands, notices, summonses or legal papers received in connection with" the lawsuit. Notice requirements in insurance policies such as "as soon as practicable" have been interpreted in Alabama to mean the insured must give notice within a reasonable time under the circumstances of the case. *Alabama Plating Co. v. United States Fid. & Guar. Co.,* 690 So.2d 331, 338 (Ala. 1996) (citing *CIE Serv. Corp v. Smith*, 460 So.2d 1244 (Ala. 1984)).

In this case, The Break received the lawsuit summons and complaint on September 20, 2017 but failed to inform Evanston about the lawsuit or provide a copy of the complaint until June 29, 2018. The Break provided no explanation for the nine-month delay.

In *Watts v. Preferred Risk Mutual Insurance Co.,* 423 So.2d 171 (Ala.1982), the Alabama Supreme Court held that insured's failure to "comply within a reasonable time with a provision in an … liability policy requiring the forwarding of suit papers 'release[s] the insurer from the obligations imposed by the contract, although no prejudice may have resulted.'" *Id.* at 173 (quoting *Standifer v. Aetna Casualty and Surety Co.,* 319 F. Supp. 1385 (N.D. Ala. 1970); *American Fire and*

*Casualty Co. v. Tankersley*, 270 Ala. 126, 116 So. 2d 579 (1959)). "[U]nder Alabama law there are only two factors to be considered in determining the reasonableness of a delay in giving notice to an insurer: the *length* of the delay and the *reasons* for the delay." *Haston v. Transamerica Ins. Services,* 662 So.2d 1138, 1141 (Ala. 1995) (italics in original) (quoting *Southern Guar. Ins. Co. v. Thomas,* 334 So.2d 879, 883 (Ala. 1976)). If the insured offers no reasonable excuse for the delay, or offers no excuse for the delay, reasonable or otherwise, the court "must conclude that the delay was unreasonable as a matter of law." *Id.* "Alabama courts have previously found delays of six months, eight months, and one year to be unreasonable as a matter of law." *Arrowood Indem. Co. v. Macon County Greyhound Park, Inc.,* 757 F.Supp.2d 1219, 1228 (M.D. Ala. 2010) (citing *Thomas*, 334 So.2d at 883; *Pharr v. Cont'l Cas. Co.,* 429 So.2d 1018, 1019 (Ala. 1983); *Correll v. Fireman's Fund Ins. Cos.*, 529 So.2d 1006, 1009 (Ala. 1988)). Accordingly, The Break's admittedly unexplained nine-month delay was unreasonable as a matter of law. This breach of the policy's notice conditions provides an independent basis for determining Evanston owes no duty to defend or indemnify The Break against Ms. Beasley's lawsuit.

## CONCLUSION

For two separate reasons, the Court should grant Evanston default judgment against Ms. Beasley and determine no duties to defend or indemnify are owed to

The Break with respect to Ms. Beasley's lawsuit. First, the factual allegations of the underlying lawsuit, regardless of the negligence theories advanced, fall within the scope of the assault and battery exclusion. Second, The Break's admittedly unexplained failure to notify Evanston concerning the lawsuit or provide copies of the lawsuit papers for nine months was unreasonable as a matter of law, and this breach of the policy's notice conditions relieves Evanston of liability.

Respectfully submitted,

*/s/ Scott Hetrick*
R. Scott Hetrick (HETRR5277)
scott.hetrick@arlaw.com

Jannea S. Rogers (ROGEJ7403)
jannea.rogers@arlaw.com
ADAMS AND REESE LLP
11 N. Water Street, Suite 23200
Mobile, AL 36602
P.O. Box 1348, Mobile, AL 36633
Phone: (251) 433-3234
Fax: (251) 438-7733
Attorneys for Evanston Insurance Company

## CERTIFICATE OF SERVICE

I certify that this 9th day of January, 2019, I served a copy of the foregoing on counsel for The Break I, Inc. through the CM/ECF electronic filing system and further certify I served a copy of the foregoing on Amanda Beasley by first class United States mail, postage prepaid, properly addressed to:

Amanda Beasley
4559 Spearman Road
Pinson, Alabama 35126

/s/ *Scott Hetrick*

27