**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EVANSTON INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:18-CV-01197-KOB** |
| | ) | |
| **THE BREAK I, INC., d/b/a THE BREAK** | ) | |
| **RESTAURANT & BILLIARDS, INC., and** | ) | |
| **AMANDA BEASLEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on "Plaintiff's Motion for Judgment on the Pleadings Against Defendant The Break I, Inc." (Doc. 17). Evanston Insurance Company filed this case against The Break I, Inc., d/b/a The Break Restaurant & Billiards, Inc. and Amanda Beasley on July 31, 2018. (Doc. 1). On August 1, 2015, Ms. Beasley was shot outside The Break in Birmingham, Alabama. Ms. Beasley sued The Break in the Circuit Court of Jefferson County, Alabama, on July 6, 2017. The Break allegedly failed to inform Evanston, its insurer, of the pending lawsuit until June 29, 2018, when the parties were scheduled to mediate the underlying suit. At that time, The Break requested that Evanston defend it against Ms. Beasley's lawsuit and provide coverage for any damages she might obtain.

Evanston filed this action seeking a declaratory judgment that (1) because The Break breached the insurance policy's notice conditions, Evanston does not owe a duty of defense or indemnity to The Break; (2) because Ms. Beasley's claim is barred by the policy's assault-and-battery exclusion, Evanston does not owe a duty of defense or indemnity to The Break; and (3)

because the policy does not cover punitive damages, Evanston does not owe a duty of indemnification to The Break for any punitive damages that may be awarded to Ms. Beasley.

On January 9, 2019, Evanston filed its motion for judgment on the pleadings against The Break, (doc. 17), and a motion for default judgment against Ms. Beasley, (doc. 15).[1] The court ordered The Break to respond to the motion for judgment on the pleadings on or before February 6, 2019, and Evanston to submit its reply brief, if necessary, on or before February 20, 2019. (Doc. 21). The Break never filed a response, and so Evanston never filed a reply brief. The motion is now ripe for review.

## I. Background

Evanston's predecessor, Essex, insured The Break prior to the merger between Evanston and Essex. The policy at issue, Policy 2CU1833, ran from April 6, 2015 until April 6, 2016. Under the policy, Essex agreed to pay The Break for damages incurred by bodily injuries or property damages caused by an occurrence, which must take place in the coverage territory during the policy period. Essex has "the right and duty to defend the insured against any 'suit' seeking those damages," but has no such right or duty to defend a suit to which the insurance did not apply. (Doc. 1 at 3).

In the event of an occurrence, offense, claim, or suit, the policy required The Break:

**(1)** [to i]mmediately record the specifics of the claim or "suit" and the date received; and

**(2)** [to n]otify [the insurer] as soon as practicable. You must see to it that [the insurer] receive[s] written notice of the claim or "suit" as soon as practicable.

---

[1] The Clerk of Court previously entered a default against Ms. Beasley on January 8, 2019. (Doc. 14). This Memorandum Opinion only addresses the motion for judgment on the pleadings against The Break. (Doc. 17). A separate Memorandum Opinion will address the motion for default judgment against Ms. Beasley. (Doc. 15).

(Doc. 1 at 3). Further, The Break must "[i]mmediately send [to the insurer] copies of any demands, notices, summonses, or legal papers received in connection with the claim or 'suit.'" (*Id.*).

The policy specifically excluded from the insurance coverage injuries arising from assault or battery. The policy also excluded "[f]ines, penalties, and punitive or exemplary damages, or any expenses or any obligation to share such damages or repay another." (Doc. 1 at 5).

On August 1, 2015, Ms. Beasley was shot in the left leg and ankle outside The Break's place of business at 1001 20th Street South, Birmingham, Alabama. She alleges that she observed one of The Break's "security guards or personnel escort a male and female patron to their vehicle." (Doc. 1 at 7). She watched those patrons get into the vehicle and drive off the premises. Several minutes later, the same two patrons purportedly returned in their vehicle and stopped at the parking lot entrance of The Break. The male patron fired several gunshots before the patrons fled in their vehicle. The Break's security guard then brandished a gun and began shooting at the vehicle. During this time, the security guard allegedly shot Ms. Beasley in the left leg and ankle.

Evanston first learned of the potential claim by Ms. Beasley upon receiving a letter, dated January 11, 2016, from Ms. Beasley's then-attorneys, Norris Injury Lawyers. The letter was directed to The Break's insurance agent, Nesbitt and Associates, Inc. Evanston subsequently sent two reservation-of-rights letters to The Break—one in January 2016 and one in May 2016. Both letters included the following language:

> In the event that you receive notice that a suit has been filed, please forward the suit and any additional information to our attention as soon as possible so that we can evaluate the specific allegations under the policy.

(Doc. 1 at 6). In the January 2016 letter, because no suit had been filed as of that time, Evanston reserved the right to investigate the matter and disclaim coverage, but pointed out that "it appears that Ms. Beasley was injured due to a battery . . . and even a theory that you/your security had the duty to suppress the assault/battery would not be covered by the Essex policy." (Doc. 1-2 at 4). The May 2016 letter merely referred to the January 2016 letter and included a copy of that letter. (Doc. 1-3).

In May 2017, Ms. Beasley's current attorney, Jarrod Nichols, wrote to Evanston's claims manager. Mr. Nichols included the police report relating to the shooting and the affidavit of Bobby Banks, a purported witness of the shooting.

On July 6, 2017, Ms. Beasley filed a lawsuit against The Break in the Circuit Court of Jefferson County, Alabama. In Count One, Ms. Beasley alleged that The Break "engaged in willful misconduct, malice, wantonness or otherwise demonstrated an entire want of care with regard to [Ms. Beasley], thereby entitling [her] to punitive damages." (Doc. 1 at 8). In Count Two, she alleged that The Break "negligently hired, contracted, retained and/or trained its employees, agents or servants" resulting in the employees, agents, or servants "not [being] adequately or properly qualified nor competent to provide safety and security to and for customers, patrons or invitees of Defendant THE BREAK or to others on or near Defendant's premises." (*Id.* at 8–9).

On September 20, 2017, The Break's owner and president, James Meeks, Jr., received notice of the lawsuit. The Break hired its own lawyer and filed its answer to the lawsuit on September 26, 2017.

In January 2018, the Circuit Court ordered The Break and Ms. Beasley to mediate the claim by June 29, 2018.

On June 29, 2018, The Break informed Evanston of the lawsuit. The Break's attorney emailed the complaint to an employee of Evanston's claims manager. The Break did not submit any additional lawsuit documents and did not inform Evanston of the mediation order. The Break requested that Evanston defend it against Ms. Beasley's lawsuit and that Evanston provide coverage for any damages she may recover. Evanston agreed to defend The Break, but—according to this complaint—expressly reserved its right to withdraw the defense and deny coverage pending the outcome of this litigation. (Doc. 1 at 10–11).

On July 31, 2018, Evanston filed this declaratory judgment lawsuit against The Break and Ms. Beasley. Evanston raises three arguments why it owes no duty to defend or indemnify The Break: (1) The Break breached the notice conditions of the insurance policy; (2) Ms. Beasley's injuries arose out of assaults or batteries, which are excluded from policy coverage; and (3) to the extent Ms. Beasley seeks punitive damages, the policy excludes such damages.

## II. Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings after the pleadings are closed, but early enough to not delay trial. *See* Fed. R. Civ. P. 12(c). A judgment on the pleadings is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).

To determine whether the movant is entitled to a judgment on the pleadings, the court should "accept as true all material facts alleged in the non-moving party's pleading, and . . . view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). When a plaintiff moves for a judgment on the pleadings, the facts of the complaint "are taken as true only where and to the extent that they do not conflict

with those of the answer." *Bass v. Hoagland*, 172 F.2d 205, 207 (5th Cir. 1949).[2] "Where the

plaintiff moves for judgment on the pleadings, the fact allegations of the answer are taken to be

true, but those of the complaint are taken as true only where and to the extent that they do no

conflict with those of the answer." *Parker v. DeKalb Chrysler Plymouth*, 459 F. Supp. 184, 187

(N.D. Ga. 1978), *aff'd* 673 F.2d 1178 (11th Cir. 1982).

### III. Discussion

Evanston raises two arguments in its motion for judgment on the pleadings why it does

not owe a duty to defend or indemnify The Break in Ms. Beasley's suit: (1) The Break breached

the notice conditions of the insurance policy; and (2) Ms. Beasley's injuries arose out of assaults

and batteries, which are excluded from policy coverage. The court will now discuss each

argument asserted by Evanston.

#### a. Notice provisions

Evanston contends that the insurance policy contained various notice provisions that The

Break failed to follow, and so Evanston is not required to indemnify or defend The Break in the

underlying litigation.

Policy 2CU1833 explains the insured's duties of notification in the event of an

occurrence, offense, claim, or suit: "You must see to it that we are notified *as soon as*

*practicable* of an 'occurrence' or an offense which may result in a claim," including information

such as "(1) [h]ow, when, and where the 'occurrence' took place; (2) [t]he names and addresses

of any injured persons and witnesses; and (3) [t]he nature and location of any injury or damage

arising out of the 'occurrence' or offense." (Doc. 1-1 at 22–23 (emphasis added)). The policy

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that Fifth Circuit decisions handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 26). Further, if a suit is filed, the insured must "(1) [*i*]*mmediately* record the specifics of the claim or 'suit' and the date received; and (2) [n]otify us as soon as practicable." (*Id.* at 23 (emphasis added)). Additionally, the insured must "[*i*]*mmediately* send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or 'suit.'" (*Id.* (emphasis added)).

The Supreme Court of Alabama has explained the purposes of notice-of-occurrence and notice-of-suit requirements:

> The purposes behind these two types of notice is [sic] well settled: An insurer must have timely notice of an event or occurrence in order to form an intelligent estimate of its rights and liabilities under the policy, to afford it an opportunity to investigate, to allow it to participate in the litigation, and to prevent fraud. The purpose of a notice-of-lawsuit provision in an insurance policy is to give the insurer the opportunity to control litigation on which its contractual liability hinges.

*Travelers Indem. Co. of Conn. v. Miller*, 86 So. 3d 338, 347 (Ala. 2011) (internal citations omitted).

Under Alabama law, "as soon as practicable" means "that the insured must give notice 'within a reasonable time under all the circumstances.'" *U.S. Fidelity & Guar. Co. v. Baldwin Cty. Home Builders Ass'n, Inc.*, 770 So. 2d 72, 75 (Ala. 2000) (quoting *U.S. Fidelity & Guar. Co. v. Bonitz Insulation Co.*, 424 So. 2d 569, 572 (Ala. 1982)). And "where an insured fails to show a reasonable excuse or the existence of circumstances that would justify a protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice." *Id.* (quoting *S. Guar. Ins. v. Thomas*, 334 So. 2d 879, 883 (Ala. 1976)).

In his affidavit filed as part of the state court litigation, Fredrick James Meeks—the owner, president, and operator of The Break—explained that he first received notice of the state

7

court litigation on September 22, 2017. (Doc. 1-8 at 1). The Break failed to notify Evanston about the litigation until June 29, 2018, the day by which The Break and Ms. Beasley were ordered to mediate the claim. But Evanston received notice of the occurrence from Ms. Beasley's counsel in January 2016. No one disputes that The Break did not give Evanston (1) notice of the occurrence involving Ms. Beasley, which occurred on August 1, 2015, or (2) notice of the lawsuit served on the Break on September 22, 2017, until June 29, 2018. So, the court must first determine whether The Break met the policy requirement of notifying Evanston "as soon as practicable."

Under Alabama law, "as soon as practicable" means "'within a reasonable time' in view of all the facts and circumstances of the case." *State Farm Mut. Auto. Ins. v. Burgess*, 474 So. 2d 634, 636 (Ala. 1985). And the court can only consider two factors "in determining the reasonableness of a delay in giving notice to an insurer: the *length* of the delay and the *reasons* for the delay." *Travelers Indem. Co. of Conn.*, 86 So. 3d at 342. Notably, prejudice to the insurer is *not* a factor in the reasonableness of the delay under Alabama law. *See S. Guar. Ins.*, 334 So. 2d at 883 ("[W]hether the insurer was prejudiced by the delay is immaterial to a determination of the reasonableness of the delay where the giving of reasonably timely notice is expressly made a condition precedent to any action against the insurer . . . .").

Here, The Break provided no reason to explain its nine-month delay in notifying Evanston of the pending suit filed by Ms. Beasley *or* its nearly three-year delay in notifying Evanston of the occurrence regarding Ms. Beasley on August 1, 2015. And "if there is no reasonable excuse offered for a delay in giving notice, the issue may be decided as a matter of law." *Travlers Indemn. Co. of Conn.*, 86 So. 3d at 346 (quoting *Haston v. Transamerica Ins. Servs.*, 662 So. 2d 1138, 1141 (Ala. 1995)).

The Supreme Court of Alabama has held an eight-month delay by the insured in notifying the insurer of a suit was unreasonable as a matter of law when the insured offered no reason for the delay. *See Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019–20 (Ala. 1983); *see also S. Guar. Ins.*, 334 So. 2d at 885 (concluding that a six-month delay with no reasonable excuse for the delay was unreasonable as a matter of law). So, because The Break offered no reason whatsoever for the nine-month and three-year delays, the court must conclude as a matter of law that the delays to notify Evanston of the occurrence and of the suit were unreasonable.

Now that the court has concluded that The Break unreasonably delayed in providing notice to Evanston of the occurrence and of the suit, the court must determine whether the notice to Evanston on behalf of Ms. Beasley excused The Break's failure to give notice.

Ms. Beasley's counsel's letter to Evanston on January 16, 2016, regarding the occurrence notified Evanston of the shooting that occurred on or around The Break's premises on August 1, 2015. But "whether the insurer was prejudiced by the delay is immaterial to a determination of the reasonableness of the delay where the giving of reasonably timely notice is expressly made a condition precedent to any action against the insurer." *S. Guar. Ins.*, 334 So. 2d at 883. So, even though Ms. Beasley gave Evanston notice of the incident, Ms. Beasley's proactive letter does not excuse The Break's failure to follow the notice provisions in its insurance policy because Evanston does not have to prove that it was prejudiced by the delay.

Additionally, the policy required the *insured* to notify the insurer of an occurrence and of a suit, not the *claimant*. *See Reeves v. State Farm Fire & Cas. Co.*, 539 So. 2d 252, 255 (Ala. 1989) (noting that active notice of an occurrence "would not obviate the requirement that the insured give written notice of the occurrence"). Specifically, the policy required the insured to "see to it that [Evanston is] notified as soon as practicable of an 'occurrence.'" (Doc. 1-1 at 22).

In *Auto-Owners Insurance Co. v. Wier-Wright Enterprises, Inc.*, the court found that the insured "saw to it" that the insurer was notified as soon as practicable when the insured forwarded the claimant's attorney's letter to the insured describing the potential claim. No. 5:15-cv-1118-CLS, 2017 WL 1019535, at *19 (N.D. Ala. Mar. 16, 2017). But here, The Break took no action to inform Evanston of the occurrence and in no way "saw to it" that Evanston was notified of the occurrence. Thus, Ms. Beasley's counsel's letter does not excuse The Break's delay in notifying Evanston.

The court finds that The Break breached its notice-of-suit provision in the insurance policy, and so Evanston does not owe a duty to indemnify or to defend The Break under the policy.

### b. Assault-and-battery exclusion

Even assuming that The Break did not violate the policy's notice-of-suit provision, Evanston contends it still would not owe a duty to indemnify or to defend The Break because of the policy's assault-and-battery exclusion.

Generally, "insurance companies have the right to limit their liability and to write policies with narrow coverage." *Hooper v. Allstate Ins.*, 571 So. 2d 1001, 1003 (Ala. 1990). And "[w]here there is no ambiguity in its terms, this Court must enforce the contract as written and cannot defeat express provisions in the policy, including exclusions, by making a new contract for the parties . . . ." *Turner v. U.S. Fidelity & Guar. Co.*, 440 So. 2d 1026, 1028 (Ala. 1983).

In determining whether an insurer owes a duty to defend, "it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Cas. Ins. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005); *see also Cotton States Mutual Ins. v. Daniel*, No. 3:07-CV-843-WKW, 2008 WL 4999097, at *18 (M.D.

Ala. Nov. 20, 2008) ("To ascertain whether [an insurer] owes [its insured] a duty to defend, the court focuses on the factual allegations in the complaint [against the insured], not on the legal theories asserted.").

And, while Evanston contends that it has neither a duty to defend nor a duty to indemnify The Break, the court notes that the two duties are intertwined. "[T]he duty to *defend* is broader than the duty to *indemnify*. Accordingly, where the court finds . . . no duty to *defend*, it also must find . . . no duty to *indemnify*." *Penn. Nat'l Mutual Casualty Ins. v. Retirement Systems of Ala.*, 104 F. Supp. 3d 1313, 1316 (N.D. Ala. 2015) (internal citation omitted).

The insurance policy includes an endorsement, which specifically modifies the insurance policy in the case of an assault or battery.

> "Injury" arising out of "assault or battery", or any act or omission in connection with the prevention or suppression of "assault or battery", whether caused by or at the instigation or direction of:
> **(1)** Any insured;
> **(2)** Any "employee" of the insured;
> **(3)** A patron of the insured; or
> **(4)** Any other person.
>
> This exclusion applies regardless of any charges or allegations of negligent hiring, training, placement or supervision.

(Doc. 1-1 at 43). The endorsement defines "assault or battery" as:

> **a.** Any attempt or threat to inflict "injury" to another person including any conduct or action that would reasonably place such person in apprehension of such "injury"; and/or
> **b.** The intentional or reckless physical contact with or any use of force against a person without his or her consent that results in "injury" or offensive or abusive touching, whether or not the actual "injury" inflicted was intended or expected. The use of force includes but is not limited to the use of a weapon.
>
> "Assault or battery" includes "injury" resulting from the use of reasonable force to protect persons or property.

(*Id.*).

Evanston identifies two separate assaults and/or batteries that caused Ms. Beasley's injuries. First, the male patron shot at The Break's security guard. By shooting, the male patron reasonably placed the security guard in apprehension of an injury, as a reasonable person would be apprehensive of an injury if an individual shot at him. And but for the male patron's shooting, the security guard would not have returned fire, which ultimately caused Ms. Beasley's injuries.

Second, The Break's security guard shot at the male patron. Again, a reasonable person would be apprehensive of an injury if an individual shot at him. So, the security guard committed an assault or battery by opening fire on the male patron. He also committed an assault or battery under the policy's second definition of an assault or battery. The security guard intentionally or recklessly used force against a person without her consent by shooting a gun at the male patron and hitting Ms. Beasley. That the security guard intended to hit the male patron and not Ms. Beasley is irrelevant; the assault or battery exception in the policy makes no distinction as to whom the assault or battery was intended to harm. As a result of the security guard shooting, Ms. Beasley was injured. So, two assaults or batteries occurred.

But Ms. Beasley in her complaint does not assert assault or battery claims against the security guard. Instead, she alleges that The Break injured her by (1) "engag[ing] in willful misconduct, malice, wantonness or otherwise demonstrated an entire want of care with regard to [Ms. Beasley]," (doc. 1 at 8); and (2) "negligently hir[ing], contract[ing], retain[ing] and/or train[ing] its employees, agents or servants" resulting in the employees, agents, or servants "not [being] adequately or properly qualified nor competent to provide safety and security to and for customers, patrons or invitees of Defendant THE BREAK or to others on or near Defendant's premises," (*id.* at 8–9).

12

The Supreme Court of Alabama provided guidance on this issue in *Admiral Insurance Co. v. Price-Williams*, 129 So. 3d 991 (Ala. 2013). In that case, the plaintiff sued for injuries resulting from an assault and battery by fraternity officers by asserting negligence and wantonness claims against the officers "based on their failure to implement a risk-management program for [the fraternity]" in an attempt to plead around the assault-and-battery exclusion in the insurance policy. *Id.* at 998. But the court held that the assault-and-battery exclusion barred the negligence and wantonness claims because the plaintiff's injuries still derived from the assault and battery. The facts—not the allegations—determined the coverage. *See Hartford Cas. Ins.*, 928 So. 2d at 1012 ("[I]t is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action."]. The plaintiff's injuries from the negligence and wantonness and from the assault and battery were indivisible. "All of [the plaintiff's] injuries arose from and were the product of the assault—notwithstanding the fact that the negligent or wanton failure to implement a risk-management program may have been an additional proximate cause." *Id.* at 998–99 (internal citation omitted). And "regardless of the fact that there may have been a separate act that also contributed to [the plaintiff's] injuries, there is no coverage in this case." *Id.* at 999.

Similarly, all of Ms. Beasley's injuries arose from and were the product of the assault. The security guard shot Ms. Beasley in the leg, which caused her injury. Whether The Break was negligent by hiring the security guard or by engaging in willful misconduct, malice, wantonness, or other lack of care toward Ms. Beasley is irrelevant to this court's holding. Because Ms. Beasley's injuries arose from an assault or battery, her injuries are excluded from the policy's coverage.

Because no duty to defend or to indemnify existed at all, the court need not reach the third argument for a declaratory judgment in Evanston's complaint regarding the lack of coverage for punitive damages.

**IV. Conclusion**

For the reasons discussed above, the court will GRANT Evanston's motion for judgment on the pleadings against The Break. (Doc. 17). The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 9th day of July, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE